(No. 11149.—Decree affirmed.)
AMY ELLIS, Plaintiff in Error, *vs.* R. H. FLANNIGAN *et al.* Defendants in Error.

*Opinion filed June 21, 1917.*

1. TRUSTS—*a trust arises by implication only when intention is apparent from the whole transaction.* A trust may be created by implication but only where an inference arises from the whole transaction and the words used that it was the intention of the parties to create a trust, and in the absence of words showing a contrary intention, a gift, whether of land or personal property, will be presumed to be absolute.

2. SAME—*when devise of a life estate does not create a trust.* Where a testator declares his purpose to be to secure a sure and permanent support for his wife during her life, and in carrying out this purpose gives her a life estate in all his property, with unrestricted power to sell all or such part of it as she may think necessary for her comfort and convenience, a devise of the remainder to an adopted daughter does not limit the wife's interest in the income nor require her to keep the property intact, and the wife is not a trustee for the benefit of the adopted daughter.

3. WILLS—*gift of life estate carries with it the unrestricted use of the income.* The devise of a life estate in property carries with it the unrestricted use of the income, and property purchased with the income is not subject to the terms of the will in the absence of some provision to that effect.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. J. C. EAGLETON, Judge, presiding.

B. W. POPE, for plaintiff in error.

W. F. SPILLER, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Sarah A. Hudson died on December 22, 1910, leaving a will, the fifth clause of which is as follows:

*"Fifth*—I give, devise and bequeath to my adopted daughter, Amy Hudson, (now Ellis,) all interest I may have in and to lots 35 and 36 of the original plat of the town of Benton, all in the city of Benton, county of Franklin and State of Illinois, the same being all of the estate of my husband, J. J. Hudson, deceased, remaining, I having disposed of all of his estate and erected a brick hotel on said lots, the said estate being referred to in the will of my said husband heretofore admitted to probate in said county of Franklin. I also give my said daughter, Amy Hudson, (now Ellis,) all of my wearing apparel, jewelry and personal ornaments, together with my family pictures, Bible and other books of general information."

All the testatrix's property not mentioned in this clause was disposed of by the will to plaintiff in error and others, but such disposition does not concern the present controversy, because the plaintiff in error claims all the property under the terms of the will of Joseph J. Hudson, the testatrix's husband, who died in 1900. He was the owner of lots 35 and 36 mentioned in clause 5 of Mrs. Hudson's will and of other property, and by his will he devised all his property to Sarah A. Hudson, his wife, for life, "with full power and authority to sell, transfer and convey, by deed or otherwise, all or any part of my real estate or personal property that she may think necessary for her comfort or convenience." He directed that at the death of his wife, in

case their adopted daughter, Amy Hudson, were then living, she should take all of his property then remaining. He nominated his wife as executrix without bond. Immediately upon his death she took possession and control of his property, real and personal. Long before her death the personal property had all been converted into money, a part of the real estate had been sold, and at the time of her death she held the title in fee to two parcels of real estate which had been conveyed to her after her husband's death and also had $389.95 on deposit in banks and some other personal property. Soon after her death Amy Ellis, who is the same person as Amy Hudson, the adopted daughter mentioned in the two wills, filed a bill of complaint in the circuit court of Franklin county, in which she alleged that at the time of Joseph J. Hudson's death his widow owned no property of any kind, and that all the property of which she died possessed belonged to the estate of Joseph J. Hudson or was in part acquired by her by the use and possession of the property of the estate. The bill alleged that soon after Mrs. Hudson came into possession of the estate she began to sell, transfer, assign and convey the property and invest the proceeds in other property in her own name, which she had no right to do; that she mingled her own funds with the funds of the estate so that they could not be distinguished, and that according to the terms of the will of Joseph J. Hudson all such property is the property of the complainant; that before Mrs. Hudson's death she had sold and given away all the property of the estate except the property known as the Hudson House, in Benton, which is a part of lots 35 and 36 of the original town of Benton. It is alleged that under the terms of the will of Joseph J. Hudson, Sarah A. Hudson was a trustee of all the property of Joseph J. Hudson, charged with the duty of keeping and preserving the property, with no power to sell, convey or transfer it except as it became necessary to do so for her comfort and convenience, and that the income

was more than sufficient to provide a comfortable living for her. The prayer of the bill was that the court decree the complainant to be the equitable owner of the property of which Sarah A. Hudson died possessed and entitled to the sole possession of it, and that the executors be directed to convey to her all of the real estate of which Sarah A. Hudson had the title and that the defendants be declared to have no interest in any of the property. The bill was afterward amended, the heirs of Sarah A. Hudson and the executors of her will were made parties and answered, the cause was heard upon the pleadings and evidence, the bill was dismissed for want of equity, and complainant appealed.

It appears from .the evidence that Joseph J. Hudson's estate consisted of a hotel in the city of Benton known as the Hudson House, valued in the inventory at $4500; three other parcels of real estate valued at $3800; the hotel furniture, fixtures and stock, valued at $3000; $896.36 in cash, and choses in action to the amount of $4307.85, exclusive of $381.66 of doubtful and desperate claims. Mrs. Hudson, as executrix, filed eight reports in the county court, in which she charged herself with the total amount of the inventory and asked credit for various payments. ᐧ The hotel was destroyed by fire on September 29, 1904, and thereupon Mrs. Hudson sold all of the real estate except lots 35 and, 36,—the hotel site,—on which she erected a brick hotel at a cost of $10,290. She had previously put a steam-heating apparatus in the hotel at a cost of $1450.

The counsel for the plaintiff in error argue that Mrs. Hudson was a trustee of the estate of her husband; that the limit of what she should receive from the estate was indicated by the testator in the fourth clause of his will, in which he expressed his desire that his executrix should designate some responsible attorney to assist and advise her in the care and management of her property and prepare annual reports of the condition of the estate, which should be submitted to the county court for approval, "and that

the judge of said court promptly remove all or any executor, administrator or attorney who may be guilty of waste or mismanagement of said estate, to the end that my said wife may retain a sure and permanent support during her life." It is argued that this expression, taken in connection with the devise to the wife for life, with power to sell only such part of the estate as she might think necessary for her comfort or convenience, and the devise of the remainder to their adopted daughter, limits the wife's interest, even in the income, to a sure and permanent support during her life and creates a trust for the benefit of the adopted daughter.

A trust may be created by implication, but it will arise only where an inference arises from the whole transaction and the words used that it was the intention of the parties to create a trust. In the absence of words showing a contrary intention, a gift, whether of land or personal property, will be presumed to be absolute, and before it will be held to be in trust it must be clear that the testator intended the property bequeathed, or some part of it, to be applied to the donee for the purpose of the trust. In this case there is no basis for such an inference. The testator declared his purpose to be to secure a sure and permanent support for his wife during her life. In carrying out this purpose he gave to her a life estate in all his property, with unrestricted power to sell all or such part of it as she might think necessary for her comfort and convenience. Being the owner of the life estate she was entitled to all the income from the property and was under no obligation to account for it to anyone. There was no direction that any part of it should be applied to the use or for the benefit of the plaintiff in error. The gift of the life estate carried with it the unrestricted use of the income. It may be conceded, though we express no opinion on the question, that her power to sell the real estate was limited to cases of necessity for her comfort or convenience, but it is manifest that after

the destruction of the hotel it was essential to the securing of any income from the property that the hotel should be re-built or some change in the investment should be made. It needs no argument to show that with her limited means the re-building of the hotel was necessary to her comfort and convenience and to the security of her sure and permanent support during life. The evidence shows that the hotel has been rented at $75 a month. Mrs. Hudson received a pension of $12 a month. The evidence does not show the value of the real estate, the title to which is in her name. The amount of any other income she may have received does not appear. It appears that the proceeds of the remainder of the estate except lots 35 and 36, together with the south ten feet of the latter lot, were required for rebuilding the hotel on those lots and were used for that purpose, and that the hotel property, alone, which is shown in Mrs. Hudson's report to the county court to be worth $20,000, is of more value than the whole of her husband's estate which she received. The will did not require Mrs. Hudson to keep the property of the estate intact. On the contrary, it expressly authorized the sale of the property for her comfort and convenience. It was for this purpose that the sales were made, and the proceeds derived from them were at once expended in improving the remaining part of the estate. If she was able from the income of her husband's estate, either with or without her own earnings, to acquire other property, such property was not subject to the provisions of his will but was subject to her own disposition.

The decree of the circuit court dismissing the bill was right, and it is affirmed.                    *Decree affirmed.*