(No. 12981.—Reversed in part and remanded.)

EDWARD A. RISSER *et al.* Plaintiffs in Error, *vs.* CHARLES FREMONT AYERS *et al.* Defendants in Error.

*Opinion filed June 16, 1920—Rehearing denied October 12, 1920.*

1. PLEADING—*relief must correspond with allegations of a bill.* A bill in equity must allege every fact necessary to the relief prayed, and the relief must correspond with the allegations and the decree must conform to the prayer of the bill.

2. SAME—*when words "said real estate" refer only to property specifically described in the bill.* Where a bill to construe a will alleges that the testator owned, "together with other property," certain lots which are specifically described in the bill, and avers that he disposed of "said real estate" by his will, the words "said real estate" refer only to the lots specifically described in the bill, where no other real estate is mentioned.

3. WILLS—*when decree should not construe particular paragraph of will.* Where a bill asks the court to construe certain provisions of a will as giving the executrix power to sell certain lots disposed of by the testator, and specifically prays that the executrix be appointed trustee and directed to sell the lots, but contains no allegations as to any other property owned by the testator or as to any other ambiguity in the will, the decree should not construe another paragraph of the will which does not come within the allegations and prayer of the bill.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding.

SIGMUND LIVINGSTON, and T. W. HOOPES, for plaintiffs in error.

BARRY & MORRISSEY, for defendant in error Charles F. Ayers.

Mr. JUSTICE FARMER delivered the opinion of the court:

This was an *ex parte* proceeding in the circuit court of McLean county by the four children and only heirs of N. J. Risser to construe portions of the will of their father and to authorize the sale of certain real estate described. The bill alleged N. J. Risser died testate August 12, 1906,

leaving surviving him a widow, Magdalena, who died June 5, 1916, and four children, Edward A. Risser, Kate Tyner, Amelia Ayers and Barbara Schertz, his only heirs; that at the time of his death the testator owned, "together with other property, the following described real estate, to-wit: Lots 1, 2, 3, 4 and 5 in block 1 of Stephenson's addition to the village of Danvers, and by said will disposed of said real estate as follows," setting out the provisions of the will. By paragraph 2 the testator gave his wife $200 each year so long as she lived, and also the home place, lots 3, 4 and 5 in block 1 of Stephenson's addition to Danvers, for her home so long as she lived, and in case she desired a home somewhere else the executor was directed to provide it for her. If the $200 per year was not sufficient to provide for the widow's needs more was to be used for that purpose. By the third paragraph the daughter Amelia was given $1000 cash, to be paid out of the sale of lots 3, 4 and 5 in block 1 of Stephenson's addition to Danvers, the balance of the money arising from the sale of said lots "to go to the estate." By paragraph 4 the daughter Barbara was given $2000 cash, to be paid to her within one year after the death of the widow. Paragraph 5 is as follows: "The residue of my estate shall be equally divided among and between Edward Risser, Amelia Risser and Kate Tyner. In case Edward Risser, Amelia Risser or Kate Tyner should not leave any heirs, their share to be equally divided between the other two." The sixth paragraph directed the executor to pay all taxes on all the testator's property and sixty-five acres of land in his wife's name. The seventh paragraph provided the executors might sell lots 1 and 2 in Danvers whenever they saw fit to do so, the proceeds "to be added to my estate." The daughter Amelia was named as executrix and duly qualified as such. She had married before the bill was filed, and her name was then Amelia Ayers. The bill alleged that under a proper construction of the will the executrix had implied power to

sell "said real estate;" that it was the intention of the testator to empower her to do so; that it was necessary for the proper settlement and distribution of said estate that the executrix sell "said real estate" to make the payments and division provided in the will, but because the wording of the will is indefinite and not specific in the delegation of power to sell, it would be impossible to procure a purchaser for the property who would accept the title without a decree of court giving the executrix power to sell said premises. The bill alleged all parties to it were of age and competent to enter their appearance in the case and that no persons other than complainants were interested, and prayed a decree construing the will, appointing the executrix trustee, and directing her, as such, to sell the premises at public sale at a time and upon terms to be fixed by the decree and make distribution of the proceeds as provided in and by the last will and testament of the testator.

The decree described the Danvers lots and found N. J. Risser was the owner of them at his death; that he left a will which had been duly probated, and Amelia Risser (now Ayers) was the duly appointed and qualified executrix; that under a proper construction of the will she had no power to sell "said real estate;" that it was necessary for the settlement of the estate that the executrix sell said real estate, and it was therefore ordered and decreed that she be appointed trustee to sell said real estate and convey the same by proper deed to the purchaser; that as executrix and trustee she sell "the premises herein above described" at public sale, to be held "on the premises in Danvers" on Saturday, September 23, 1916, between ten o'clock A. M. and four o'clock P. M., after advertising as in the decree directed. It was further adjudged and decreed that under a proper construction of the fifth clause of the will "the time for the determination of the heirs, as set forth in the fifth clause of said will and therein referred to, means the time of the death of Magdalena Risser, the surviving widow of N. J.

Risser, namely, June 5, 1916, and that the children of Magdalena Risser therein named who were living on June 5, 1916, the date of the death of Magdalena Risser, deceased, take the portions to them devised in said fifth clause of said will in fee simple absolute." This writ of error was sued out by Edward Risser and Kate Tyner. Amelia Ayers having died after decree was entered, her husband was substituted as a defendant in error.

It is contended by plaintiffs in error that under the allegations of the bill and the prayer for relief the court had no power to construe the fifth clause of the will, and also that the construction placed on said clause is erroneous. The property in Danvers is the only real estate mentioned or described in the will, and the bill does not allege the testator owned any other real estate. There was no direction in the will to sell any property that passed under paragraph 5. No reference is made in the bill to that paragraph or any property that passed under it. It is alleged that there is uncertainty in the terms of the will as to the right of the executrix to sell the Danvers lots, that their sale is necessary to a proper settlement of the estate, and the specific prayer is that the executrix be appointed trustee and directed to sell them. There was no general prayer for relief. It is said in the briefs that a considerable amount of farm land was owned by the testator which passed under the fifth paragraph of his will. It is fundamental in equity pleading that a bill must allege every fact necessary to the relief prayed and that the relief must correspond with the allegations of the bill. (*Bryan* v. *Howland,* 98 Ill. 625; *Hawley* v. *Hawley,* 187 id. 351; *Stearns* v. *Glos,* 235 id. 290.) The decree must also conform to the prayer of the bill. (*Ward* v. *Enders,* 29 Ill. 519; *Harms* v. *Jacobs,* 158 id. 505; 16 Cyc. 486, 487.) The only ambiguity alleged in the bill is as to the power of sale by the executrix of the Danvers lots. It is not alleged that the testator owned any other real estate. The bill alleges he owned the Danvers lots, (specifically de-

scribing them,) "together with other property," and avers he disposed of "said real estate" by his will, which is set out in the bill. As no other real estate was mentioned, "said real estate" could only refer to the Danvers lots described in the bill.

We have above set out the substance of the allegations of the bill, from which it will be seen that the only ambiguity in the will alleged in the bill relates to the power of the executrix to sell the Danvers lots. It is not alleged there is any uncertainty or ambiguity in the will or that the construction of any other clause or paragraph is necessary or desirable. There is no general prayer for relief, and the specific prayer is that the executrix be empowered, as trustee, to sell the Danvers lots and distribute the proceeds. The construction of the fifth paragraph was not alleged to be necessary nor asked for in the prayer for relief. Conceding the parties are concluded by the decree as to all matters coming within the allegations and prayer of the bill, they are not concluded by the decree in so far as it relates to matters not charged in the bill. Even if there had been a general prayer for relief, the allegations in the bill were insufficient to authorize a decree construing paragraph 5. *Ellis* v. *Hill,* 162 Ill. 557; *Fergus* v. *Tinkham,* 38 id. 407.

Both parties have argued in their briefs what in their view is the proper construction of paragraph 5 and differ widely on the subject. As under the bill the court was without jurisdiction to construe it we deem it improper to discuss that question.

The decree, in so far as it authorizes and directs the sale of the Danvers lots, is affirmed, and that part of the decree construing clause 5 of the will will be reversed for the reasons stated and the cause remanded to the circuit court.

*Reversed in part and remanded.*