(No. 15017.—Decree affirmed.)
EDWARD RISSER *et al.* Appellants, *vs.* CHARLES FREMONT
AYERS *et al.* Appellees.

*Opinion filed December 19, 1922—Rehearing denied Feb. 9, 1923.*

1. WILLS—*when word "heirs" means children or descendants.*
Where devisees of a residuary estate are the children of the tes-
tator, a gift over to the surviving devisees in case either of them
should die without leaving "heirs" means upon the death of a devi-
see without children or descendants.

2. SAME—*general rule as to when devise over in case of death
must take effect.* Where there is a devise to one person and if he
should die to another, without further limitation, the testator will
be presumed to have referred to a death preceding his own; but a
devise over in case the first taker dies under circumstances which
may or may not happen, as without child or children surviving him,
will take effect upon the death of the first taker under the circum-

stances specified, either before or after the death of the testator, unless other provisions of the will indicate a different intention.

3. SAME—*when devise over depends on death of devisee prior to termination of particular estate.* Where there is a devise over in case of the death of a devisee without children surviving and there is a life estate preceding the estate of the devisee, the gift over will take effect if the contingency happens at any time during the existence of the particular estate unless the will shows that the testator intended to refer to a later date, and upon the death of the life tenant without the happening of the condition the gift over is defeated.

4. SAME—*when there is an implied trust in executrix.* Where an executrix is ordered to pay a life annuity to the testator's widow but there are no funds from which to pay it, an implied trust is imposed upon the executrix during the life of the widow, and during such time she will have control of the real estate and the estate of residuary devisees will be postponed.

5. TRUSTS—*when a trust arises by implication.* A trust will be created by implication where the inference clearly arises from the whole transaction, and from the words used, that it was the intention of the parties to create a trust.

APPEAL from the Circuit Court of McLean county; the Hon. FRANK LINDLEY, Judge, presiding.

SIGMUND LIVINGSTON, and T. W. HOOPES, for appellants.

MORRISSEY, SULLIVAN & RUST, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The complainants in a suit for partition have appealed from a decree dismissing their bill.

N. J. Risser died on August 12, 1906, leaving surviving him his widow, Magdaline Risser, and four children,—Edward A. Risser, Katie Tyner, Amelia Risser and Barbara Schertz. He left a will which was admitted to probate, the material parts of which are as follows:

"*First*—It is my will that my funeral expenses and all my just debts be fully paid.

"*Second*—I give and bequeath to Magdaline Risser, my wife, $200 each year as long as she may live, and also the free use of the home property, lots three (3), four (4) and five (5) in block one (1) of Stephenson's addition to Danvers, as her home as long as she may live. If she should desire some other place as a home the executor shall provide same. If the $200 per year is not sufficient to provide for her needs more shall be used. At the death of my wife:

"*Third*—To my daughter Amelia $1000 cash, to be taken out of sale of lots three (3), four (4) and five (5) in block one (1) of Stephenson's addition, the balance of cash from sale of said three lots (3, 4, 5,) to go to estate.

"*Fourth*—To my daughter Barbara Schertz two thousand dollars ($2000) in cash within one year after the death of my wife.

"*Fifth*—The residue of my estate shall be equally divided among and between Edward Risser, Amelia Risser and Katie Tyner. In case Edward Risser, Amelia Risser or Katie Tyner should not leave any heirs, their share shall be equally divided between the other two.

"*Sixth*—The executor shall pay all taxes on all the property, and also pay taxes on the sixty-five (65) acres in my wife's name.

"*Seventh*—The executor may sell the two lots one (1) and two (2) in block one (1) of Stephenson's addition whenever said executor may see fit to do so, the return from same to be added to estate.

"*Lastly*—I hereby nominate and appoint Amelia Risser to be the executor of this my last will and testament, with bond of $5000, hereby revoking all former wills by me made."

Besides the lots mentioned in the will the testator owned 220 acres of land, which was mortgaged for $4486. On August 12, 1907, the three residuary devisees made a voluntary partition of the 220 acres by the exchange of mutual quit-claim deeds, by which 60 acres were conveyed to Ed-

ward Risser and 80 acres each to Katie Tyner and Amelia Risser. Amelia's tract was regarded as the more valuable, and to equalize the value Amelia agreed to pay $2495.33 of the mortgage debt and the others each agreed to pay $995.33 of it. Each of the deeds recited: "This deed is made as a division and partition of the real estate left by Nicholas Risser, subject to the payment of $200 per annum to Magdaline Risser, one-third of which amount the grantee herein assumes and agrees to pay under the terms of the will of said Nicholas Risser." The parties went into possession of the respective tracts conveyed to them and paid the mortgage in accordance with their agreement. Amelia Risser mortgaged her 80 acres for $2495.33 and Edward Risser mortgaged his land. Amelia Risser married Charles Fremont Ayers in August, 1909. The widow, Magdaline Risser, died on June 5, 1916, and the four children of N. J. Risser, the devisees named in his will, brought an *ex parte* proceeding to the September term, 1916, of the circuit court of McLean county for a construction of certain parts of the will. A decree was entered in that case which, among other things, construed the fifth clause of the will, and found that the children named in that clause took the portions devised therein to them in fee simple at the death of the widow, on June 5, 1916.

Amelia R. Ayers and her husband, Charles Fremont Ayers, borrowed $14,500 from the Sangamon Loan and Trust Company of Springfield, for which they mortgaged her 80 acres and other land of her husband. Edward Risser and Katie Tyner each also borrowed $14,500 from the same loan and trust company, and on April 1, 1917, executed mortgages upon their respective portions of the land securing the loans. On June 4, 1919, Amelia conveyed her 80 acres to Ayers, and died on August 10, 1919, leaving no lineal descendants. Edward Risser and Katie Tyner thereupon prosecuted a writ of error to reverse the decree of the circuit court construing clause 5 of the will in the

*ex parte* proceeding which has been mentioned, and the decree was reversed so far as it construed clause 5, for the reason that the bill did not ask for a construction of clause 5 and the allegations of the bill were insufficient to authorize a decree construing clause 5. (*Risser* v. *Ayers,* 294 Ill. 241.) Upon remandment the part of the decree which construed clause 5 was stricken out. Thereupon Edward Risser and Katie Tyner filed their bill to partition the 80 acres which had been quit-claimed to Amelia, against Ayers and the First Trust and Savings Bank of Springfield, which has succeeded to the rights of the Sangamon Loan and Trust Company, under the mortgage given by Amelia and Charles Fremont Ayers. The mortgage was given while the decree in the *ex parte* proceeding was in force and no question of its validity is made. The decree found that the three beneficiaries named in clause 5 of the will became the owners in fee simple of the real estate affected by that clause upon the death of Magdaline Risser, and that Ayers by the conveyance of Amelia had become the owner in fee simple of the 80 acres in question, and dismissed the bill for want of equity.

The word "heirs" in the fifth clause is not used in its technical sense, for none of the devisees could have died without heirs if the other two survived, as the clause contemplated. The gift over in case either of the devisees should not leave heirs clearly depends upon the death of a devisee, for no one can have heirs except upon his death. The word as here used means children or descendant. (*Lee* v. *Roberson,* 297 Ill. 321.) Where there is a devise to one person and if he should die to another, without more, the testator will be presumed to have referred to a death preceding his own, but where the devise over is to take effect if the first taker dies under circumstances which may or may not happen, as without child or children surviving him, unless controlled by other provisions of the will, it will take effect upon the death of the first taker under the circum-

stances specified, either before or after the death of the testator. (*Fifer* v. *Allen,* 228 Ill. 507.) Here the devise over is dependent not only upon the death of Amelia, but also upon the doubtful circumstance that she should not leave any heirs,—that is, children or descendants. The death referred to is therefore death at any time, before or after the death of the testator, unless controlled by other provisions of the will. If there is a particular estate preceding the gift over, the latter will take effect if the contingency happens at any time during the existence of the particular estate, and in such case a death without children surviving refers to death before the death of the life tenant unless the will shows that the testator intended to refer to a later date. *Lachenmyer* v. *Gehlbach,* 266 Ill. 11; *Morris* v. *Phillips,* 287 id. 633.

In *Ridgeway* v. *Underwood,* 67 Ill. 419, this court approved the reasonableness of the rule stated in Jarman on Wills, (vol. 2, 3d Am. ed. 462,) "that the rule which reads a gift to survivors simply as applying to objects living at the death of the testator is confined to those cases in which there is no other period to which such survivorship can be referred, and that where such gift is preceded by a life or other prior interest it takes effect in favor of those who survive the period of distribution, and those only." In that case the prior interest was given by the following provision: "I give, devise and bequeath to my beloved wife, Jane Ridgeway, in lieu of her dower, living and support on and from the farm and plantation on which we now reside." It was said that the widow had the right to remain on the farm during her life and receive from it her support, which, although not a technical life estate, was a prior interest, to which the rule expressed by Jarman applied. The will provided for survivorship, and it was held that the gift was only to those who survived the period of distribution.

In this case the personal property left by the testator amounted to $675. His will provided for the payment of

his debts and funeral expenses and for the payment of $200 a year to his widow as long as she lived, and more if that amount was not sufficient to provide for her needs. She was also to have the use of the home property, consisting of lots 3, 4 and 5 in block 1 of Stephenson's addition to Danvers, during her life. Those lots were to be sold after her death and $1000 of the proceeds was to be paid to Amelia, and Barbara Schertz was to be paid $2000 within a year after the death of the widow. The executor was directed to pay taxes on all the property and also on 65 acres of land belonging to the widow, and was given power to sell lots 1 and 2 in block 1 of Stephenson's addition whenever he saw fit. The residue of the estate, which was devised to Edward Risser, Amelia Risser and Katie Tyner, consisted of what was left after all these provisions of the will had been complied with, and it is argued on behalf of the appellees that from these provisions a trust must be implied in the executrix during the life of the widow of the testator. "Implied trusts are trusts that the courts imply from the words of an instrument where no express trust is declared but such words are used that the court infers or implies that it was the purpose or intention of the parties to create a trust." (1 Perry on Trusts, sec. 25.) A trust may be created by implication, but it will arise only where an inference clearly arises from the whole transaction and the words used that it was the intention of the parties to create a trust. *Ellis* v. *Flannigan,* 279 Ill. 93.

Whether a trust is expressly created or arises by implication, an estate will be created sufficient for the performance of the duties imposed upon the trustee. A testator gave his wife an annuity of $1000 a year, to be paid her by a named trustee for her living and the support and education of her children, and if this sum should be insufficient in any year the trustee was to pay her an additional sum not exceeding $1000. The testator gave some legacies and then

gave the remainder of his estate to his daughters and gave nothing to the trustee expressly, but authorized the trustee to sell certain of his real estate and the personal property not specifically devised. The personal property was only sufficient to pay the debts of the testator, and the trustee had no funds from which to pay the annuity to the wife. It was held that he took the real estate in trust by implication, that the daughters took the remainder after the trusts were executed, and that the widow could enforce the payment of the annuity by bill in equity. *Walker* v. *Whiting,* 23 Pick. 313.

The will in this case imposed upon the executrix duties which were not within the ordinary powers which the law confers upon an executor. She had no funds with which to pay the annuity of $200 or the further sum which might be needed for the widow's support, or to pay the taxes on the widow's property or the other real estate which the testator owned at his death upon which she was required to pay taxes, or to pay the bequest of $2000 to Barbara Schertz. In order to provide an income to make the payments and perform the duties required of her it was necessary that the executrix should have control of the real estate during the life of the widow, and she therefore took such an estate in trust to enable her to perform those duties. The estate of the residuary devisees in the residue of the estate was therefore postponed until the death of the widow, and such postponement was for the benefit of the estate. Upon the death of the widow the estate of the residuary devisees who survived her became an indefeasible estate in fee simple.

The decree of the circuit court will be affirmed.

*Decree affirmed.*